**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| DENNIS DEMETRIUS SCOTT,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN JEFFRIES, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 5:26-cv-268-MTT-ALS |

## ORDER AND RECOMMENDATION

Plaintiff Dennis Demetrius Scott, a prisoner at Macon State Prison ("MSP") in Oglethorpe, Georgia, filed a *pro se* Complaint seeking relief pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2), a motion to amend (Doc. 5), and a motion to compel (Doc. 6). Plaintiff's motion to amend is **GRANTED**, and his motion to compel is **DENIED**. Plaintiff's motion for leave to proceed IFP is also **GRANTED**. Plaintiff's Complaint is now ripe for preliminary review. On that review, it is recommended that Plaintiff's procedural due process, Takings Clause violations, and state law claims proceed for further factual development.

## MOTION FOR LEAVE TO PROCEED IFP

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). (Doc. 2). As it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed IFP is **GRANTED**. However, a prisoner allowed to proceed IFP must still pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in his trust account, the court must assess

an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his Complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I. Directions to Plaintiff's Custodian

Plaintiff is required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated. It is **ORDERED** that the warden of the institution in which Plaintiff is incarcerated, or the sheriff of any county in which he is held in custody, and any successor custodians, shall each month cause to be remitted to the clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is authorized to forward payments from the prisoner's account to the clerk of court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II. Plaintiff's Obligations Upon Release

Plaintiff should keep in mind that his release from incarceration/detention does not release him from his obligation to pay the installments incurred while he was in custody. Plaintiff remains obligated to pay those installments justified by the income in his prisoner trust account while he was detained. If Plaintiff fails to remit such payments, the Court authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

# PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

## I. Standard of Review

The PLRA directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a). Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and

"claims whose factual contentions are clearly baseless." *Id.* (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II. Factual Allegations

Plaintiff's claims arise out of his incarceration at MSP. (Doc. 1 at 3). On November 24, 2025, Plaintiff received a "federal relief fund payment [in the amount of $1,512.66], known as the Economic Impact Payment, (E.I.P.)/Stimulus check," which was deposited into what Plaintiff refers to as a "protected stimulus account".[1] *Id.* at 5. From December 9, 2025, until May 12, 2026, Plaintiff placed orders with the prison commissary using funds in the stimulus account, and there were times when refunds were due because of missing or damaged items. *Id.* However, instead of the refunds being placed back into the stimulus account, "account clerks/managers" "would re-route" the funds into a "spendable account," from which they "would seize, confiscate[], garnish the funds and apply them to internal institutional revenue/debts: (disciplinary report fees, indigent loans, etc.[,] etc.)." *Id.* Plaintiff's Complaint provides examples where he was due a refund on missing or damaged items from a commissary purchase and, instead of the money being returned to the stimulus account, it was purportedly seized by prison officials and directed "towards internal revenue streams/debts." *Id.* at 7. There was also one occasion

[1] There were three different acts providing for stimulus payments: the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, 134 Stat. 281 (2020), codified at 26 U.S.C. § 6428(a); the Consolidated Appropriations Act, 2021 ("CAA"), Pub. L. 116-260, 134 Stat. 1182 (2020), codified at 26 U.S.C. § 6428A(a); and the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. 117-2, 135 Stat. 4 (2021), codified at 26 U.S.C. § 6428B(b). The CARES Act provided for a $1,200 stimulus payment with a payment deadline of December 31, 2020, the CAA a $600 stimulus payment with a payment deadline of January 15, 2021, and the ARPA a $1,400 stimulus payment with a payment deadline of December 31, 2021. *Swinton v. IRS*, No. 3:22-cv-900 (JAM), 2023 WL 6379415, at *1 (D. Conn. Sept. 30, 2023). Payments were to be by the Internal Revenue Service ("IRS") in the form of an "advance refund." *Id.* While Plaintiff's Complaint only specifically refers to the CARES Act (Doc. 1 at 8), the account statement attached to his motion to proceed IFP shows that the November 24, 2025, stimulus payment was for a December 2021 tax refund. (Doc. 2-1 at 3).

when his stimulus account was charged for a commissary purchase, which he alleges he did not make. *Id.* Plaintiff identifies the amount of the "illegally confiscated funds" as $180.00. *Id.* at 10.

## III. Plaintiff's Claims

Plaintiff contends that the re-routing and seizure of his stimulus funds constitutes a violation of his procedural due process rights, deprivation of property, a violation of "Federal Pre-emption/Takings Clause," conversion, and a violation of "Equal Protection." *Id.* at 7-8.

### A. Procedural Due Process

Plaintiff alleges that MSP officials "implemented and executed [a] policy" whereby refunded funds from commissary purchases were "intentionally circumvented around being returned to his protected stimulus account" and "instead rerouted into [a] spendable account," where they were "seized, confiscated, and garnished." *Id.* at 7. He states these acts occurred at least eleven times and were committed "without giving the plaintiff any proper notice, hearing, appeal, opportunity to contest, or be heard." *Id.* According to Plaintiff, the confiscated funds were applied to "internal institutional revenue/debt fees (disciplinary report fees, indigent loans, etc.[,] etc.)." *Id.* at 6.

To state a claim for denial of procedural due process, a plaintiff must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The first two elements are satisfied here. "An inmate has a property interest in most money in his inmate account. Thus, [prison] policy which deprives an inmate of access to money in his account must comport with the requirements of due process." *Watkins v. Israel*, 661 F. App'x 608, 609-10 (11th Cir. 2016). Further, Plaintiff

clearly alleges state action by MSP officials. Therefore, the issue is whether Plaintiff received constitutionally adequate process.

The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (collecting cases). However, it has recognized that post-deprivation hearings can satisfy due process when there is the "necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process." *Parratt v. Taylor*, 451 U.S. 527, 539 (1981). Instances where prison employees negligently or intentionally deprive an inmate of property have been found to qualify under this exception because of the unpredictability of such deprivation. *See id.* at 541 (holding that a post-deprivation hearing for the negligent loss of a prisoner's property satisfied due process, noting that such acts are "random and unauthorized" and not ones where the state can "predict precisely when the loss will occur"); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("The state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.").

Thus, in cases of unauthorized deprivation of an inmate's property, the Eleventh Circuit and this Court have routinely found no due-process violation for failure to provide a pre-deprivation hearing because Georgia law provides an adequate post-deprivation remedy through a cause of action for conversion of property. *See, e.g.*, *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014) ("Georgia provides a civil cause of action for the wrongful conversion of personal property, and we have held that this cause of action constitutes a suitable postdeprivation remedy for procedural due process violations." (first citing O.C.G.A. § 51-10-1; and then citing *Lindsey v. Storey*, 936 F.2d

554, 561 (11th Cir.1991))); *Robinson v. Oliver*, No. 5:25-cv-323-MTT-CHW, 2026 WL 237592, at *3 (M.D. Ga. Jan. 29, 2026) (finding that the plaintiff failed to state a claim for destruction of his property during a shakedown of his cell because Georgia provides a civil cause of action for wrongful conversion), *recommendation adopted by* 2026 WL 1962035 (M.D. Ga. July 7, 2026).

However, this case is different because according to Plaintiff's allegations, MSP's rerouting and deductions from his prison account were not random and unauthorized but pursuant to a policy that was applied to other inmates who received stimulus funds. (Doc. 1 at 7, 10). In cases where deprivation of property occurs as a result of an "established state practice," a post-deprivation hearing is often deemed constitutionally inadequate. *See Parratt*, 451 U.S. at 537-38 (noting previous cases requiring predeprivation notice and a hearing where the "deprivations of property were authorized by an established state procedure"); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (holding that a pre-deprivation hearing was necessary where the plaintiff alleged that confiscations of property resulted from a "sanctioned standard operating procedure at [Georgia State Prison]"). It cannot be deemed unpredictable, random, or unauthorized if the established procedure itself causes the deprivation. *See Zinermon*, 494 U.S. at 138 (rejecting argument that admission of plaintiff as a voluntary patient to a state mental hospital without a predeprivation hearing—despite knowledge that he was incompetent to give informed consent—was unpredictable and not violative of due process, stating that "[s]uch a deprivation is foreseeable, due to the nature of mental illness, and will occur, if at all, at a predictable point in the admission process"); *Logan v. Zimmerman*, 455 U.S. 422, 435-36 (1982) (rejecting application of *Parratt* exception where a 120-day convening requirement resulted in the dismissal of the plaintiff's unlawful termination claim, stating

that "it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise"). Moreover, if the deprivation is pursuant to an established practice, a hearing and pre-deprivation notice is generally feasible. *See Rittenhouse v. DeKalb Cnty.*, 764 F.2d 1451, 1455 (11th Cir. 1985) ("[W]here a deprivation occurs pursuant to an established state procedure, predeprivation process is ordinarily feasible.").

The Court has found no Eleventh Circuit authority directly on point with the facts presented here. However, in cases where an inmate alleged that stimulus funds were deducted pursuant to an established state procedure without a pre-deprivation hearing, some district courts have held that the plaintiff sufficiently stated a claim for violation of due process to survive preliminary screening.[2] *See, e.g.*, *Tornquist v. South Dakota*, No.

---

[2] The Eleventh Circuit, however, has stated that even where the property deprivation occurs pursuant to an established state procedure *and* a pre-deprivation hearing is feasible, a post-deprivation remedy may be adequate after applying the three-factor analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Carcamo v. Miami-Dade Cnty.*, 375 F.3d 1104, 1105-06 & nn.4-5 (11th Cir. 2004) ("[T]he Supreme Court has made it clear that procedural due process cases, including those in which the plaintiff seeks to avoid the *Parratt–Hudson* doctrine on the basis of an established state policy or practice, are governed by the three-factor analysis set out in *Mathews v. Eldridge*." (citing *Zinermon*, 494 U.S. at 127-39)). In *Mathews*, the Supreme Court explained that an analysis of the sufficiency of procedural protections should consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. However, at this stage, the Court does not have sufficient information to weigh these factors and determine whether Plaintiff's post-deprivation remedies would alone pass constitutional muster.

4:23-CV-04195-LL, 2024 WL 3967357, at *9 (D.S.D. Aug. 28, 2024) ("Because Tornquist alleges that the SDSP acted in accordance with an established state procedure when confiscating his stimulus funds, a post-deprivation remedy does not satisfy due process."); *Langford v. Daniels*, No. 3:22-cv-482-MMD-CSD, 2023 WL 2877590, at *5-6 (D. Nev. Mar. 3, 2023) (allowing due process claim for deprivation of stimulus funds to proceed past preliminary screening, noting that "[a]n authorized deprivation is one carried out under established state procedures, regulations, or statutes").

Further, district courts have found procedural due process violations when the established state policies directed the confiscation of inmate funds irrespective of whether the amounts taken correlated to specific debts owed by the inmate. *See Cody v. Clark*, No. 4:22-CV-04010-KES, 2022 WL 1568871, at *15 (D.S.D. May 18, 2022) (allowing procedural due process claim to proceed past preliminary screening where the court could not tell whether all of the funds seized went towards court-ordered restitution and fines); *Lamar v. Hutchinson*, Nos. 4:21-CV-00529, 4:21-CV-00347, 2021 WL 4047158, at *8-11 (E.D. Ark. Sept. 3, 2021) (finding that the plaintiff was likely to succeed on his claim that prison authorities violated his procedural due process rights by enforcing a state law that required the seizure of almost all of an inmate's stimulus funds and—after deducting for court ordered funds and restitution—directing them into general inmate welfare and care accounts).[3] Here, Plaintiff alleges that MSP officials seized his money and "appl[ied]

[3] Even district courts that have allowed procedural due process claims to proceed for stimulus funds directed into a general prison fund have found that the deduction of stimulus funds for payment of an inmate's court-ordered restitution and fines is constitutionally permissible because the inmate had the opportunity to contest those amounts at trial or a plea hearing. *Lamar*, 2021 WL 4047158, at *8. Similarly, confiscation of stimulus funds to pay institutional debts has been found not to violate due process as long as the inmate has the opportunity to challenge whether those debts are owed. *Lamar v. Profiri*, No. 4:21-CV-00529-LPR, 2023 WL 3791456, at *4 (E.D. Ark.

them to internal institutional revenue/debts: (disciplinary reports fees, indigent loans, etc.[,] etc.).” Doc. 1 at 5. It is unclear whether this means that the confiscated funds were applied solely to reduce Plaintiff's debts or if at least some were placed into a general institutional fund. Construing Plaintiff's complaint liberally—as it is required to do—the Court assumes the latter and finds that Plaintiff adequately states a procedural due process claim.

The Court must next consider whether Plaintiff has adequately tied his procedural due process claim to the named Defendants. While Plaintiff's Complaint contains numerous general references to MSP “officials,” his only specific allegations are against MSP “account clerks/managers.” Doc. 1 at 5. Plaintiff filed a motion to amend his Complaint to identify Carol Simpson, Brittany Marie Latour, and Cedric Dion Tucker as account clerks/managers who “accessed his protected account and committed the illegal actions in regard to his protected federal relief funds.” Doc. 1 at 2. Thus, Plaintiff's motion to amend (Doc. 5) is **GRANTED**, and Plaintiff's claims against Defendants Simpson, Latour, and Tucker shall proceed for further factual development. However, it is recommended that Plaintiff's due process claims against the remaining Defendants be dismissed without prejudice.[4]

---

June 2, 2023) (finding no due process violation for failure to provide a post-deprivation administrative hearing to challenge confiscation of stimulus funds to satisfy institutional debts where the plaintiff's complaint did not allege that he could not seek relief through the prison's grievance procedures).

[4] Plaintiff's original Complaint lists “Mrs. Davis” in the case caption and list of Defendants. Doc. 1 at 1, 4. However, he does not specifically refer to Mrs. Davis in the body of the Complaint, and his motion to amend does not identify her as one of the account clerks/managers who accessed and confiscated funds from his account. Doc. 5 at 2. A district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that connect the defendant with the alleged constitutional violation. *Douglas v. Yates*, 535 F.3d 1316,

B. <u>Takings Clause</u>

Plaintiff alleges that the deductions from his stimulus funds violate the Takings Clause. Doc. 1 at 8. The Takings Clause provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend V. "To state a claim for violation of the Takings Clause, Plaintiff must show (1) he possesses a property interest that is constitutionally protected, and (2) the deprivation or reduction of that interest constitutes a taking." *Daker v. Bland*, No. 6:20-cv-90, 2023 WL 6167612, at *9 (M.D. Ga. Sept. 1, 2023) (citing *Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trs.*, 775 F. App'x 496, 499 (11th Cir. 2019)), *recommendation adopted by* 2023 WL 6164412 (S.D. Ga. Sept. 21, 2023).

Initially, the Court notes that it is not clear if Plaintiff can assert a claim directly under the Takings Clause. *See DeVillier v. Texas*, 601 U.S. 285, 292 (2024) ("Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause."). However, assuming he can, "[a] plaintiff suing under Section 1983 for a Takings Clause violation does *not* need to exhaust state-level remedies first." *Bell v. Orange Cnty., Fla.*, No. 6:25-cv-865-PGB-NWH, 2025 WL 4086572, at *2 (M.D. Fla. Dec. 19, 2025) (citing *Knick v. Twp. of Scott, Penn.*, 588 U.S. 180, 185 (2019)), *recommendation adopted by* 2026 WL 227062 (M.D. Fla. Jan. 14, 2026). Here, because it is not clear that Plaintiff received a "dollar-for-dollar" reduction for his institutional obligations—as opposed to a portion of the funds being directed to a general prison fund—the Court recommends that his Takings Clause claim also proceed for further factual development. *See Cody*, 2022 WL 1568871, at *14 (allowing Takings

---

1322 (11th Cir. 2008). Therefore, the Court recommends that Plaintiff's claims against Mrs. Davis be dismissed without prejudice.

Clause claim to proceed past preliminary screening where the Court could not determine whether all of the seized stimulus funds "reflect[ed] a reduction in debt owed").

C. Equal Protection

Plaintiff contends that MSP officials "treated Plaintiff . . . differently from similarly situated inmates by improperly diverting his protected funds into an unprotected account[.]" Doc. 1 at 8. "To state an equal protection claim under § 1983, a plaintiff must allege that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on a constitutionally protected interest, such as race." *Slakman v. Buckner*, 434 F. App'x 872, 876 (11th Cir. 2011) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001)). "Alternatively, a plaintiff may show a 'class of one' equal protection claim, by showing that he was 'intentionally treated differently from others who were similarly situated and that there is no rational basis for the difference in treatment.'" *Ellison v. Ala. Bd. of Pardons & Parole*, No. 17–13235–D, 2017 WL 6947946, at *6 (11th Cir. Dec. 13, 2017) (quoting *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263-64 (11th Cir. 2010)). "A class of one plaintiff might fail to state a claim by omitting key factual details in alleging that [he] is 'similarly situated' to another." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007). "To avoid dismissal, a class-of-one plaintiff must allege facts sufficient to show that [he] was 'intentionally treated differently from others similarly situated.'" *Tropical Soup Corp. v. City of Key West*, No. 21-10459, 2021 WL 3878250, at *2 (11th Cir. Aug. 31, 2021) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Here, Plaintiff does not allege that he is a member of a protected class, and while he makes a conclusory allegation that he is being treated differently than other similarly situated inmates, he does not allege that there were other inmates whose stimulus funds

were *not* similarly deducted. In fact, he alleges that other inmates receiving stimulus funds were treated in a like manner. Doc. 1 at 10. As such, he fails to state an equal protection claim. *See Reid v. Doe*, No. 23-3622 (MAS) (JBD), 2024 WL 982231, at *2 (D.N.J. Mar. 7, 2024) ("Although Plaintiff alleges other prisoners received their [stimulus] payments, he does not allege that they were similarly situated—he says nothing about whether these prisoners had similar debts to the state, or whether they received their payments in the same form or manner, or otherwise attempt to show that they are similarly situated to him.").

D. Federal Pre-Emption and CARES Act

Plaintiff also appears to assert a claim pursuant to one of the three stimulus fund statutes, though the only stimulus fund legislation he specifically cites is the CARES Act. Doc. 1 at 8. Most district courts considering claims for confiscation of stimulus funds have found that the CARES Act provides no private right of action for such claim. *See, e.g.*, *Lacy v. Carr*, No. 24-cv-509-jdp, 2024 WL 5089115, at *3 (W.D. Wis. Dec. 12, 2024) (finding that the CARES Act did not create a cause of action for violation of the statute); *Lamar*, 2021 WL 4047158, at *5 ("[T]he CARES Act does not provide a private cause of action on which a preemption or statutory violation argument may be made.").

Some district courts have found an implied right of action under the CAA, *see e.g.*, *Cody*, 2022 WL 1568871, at *14, but this appears to only be applicable to payments made prior to January 15, 2021. *See Lamar*, 2021 WL 4047158, at *6 (expressing skepticism that the CAA created a private right of action but that even if it did, it would only apply to payments prior to January 15, 2021).

Courts considering ARPA have concluded that it also does not provide for a private cause of action. *See Lacy*, 2024 WL 5089115, at *3 (noting also that a claim would fail

under ARPA because it "d[id] not limit garnishment for most debt); *Hayes v. Graves*, Master Case No. 4:21-cv-00347-LPR, 2022 WL 822881, at *9 (E.D. Ark. Mar. 16, 2022) ("Plaintiffs do not persuade the Court to alter its prior conclusion that neither the CARES Act, nor the CAA, nor the ARPA supports a private right of action under the statutes themselves or in combination with 42 U.S.C. § 1983."). Therefore, the Court recommends that Plaintiff's claims under the CARES Act, CAA, and/or ARPA be dismissed without prejudice.

E. State Law Claims

Plaintiff asserts claims for "deprivation or property" and "conversion." Doc. 1 at 7-8. The Court construes these allegations as a state law claim for conversion of property. *See* O.C.G.A. § 51-10-1 (providing that deprivation of possession of property "is a tort for which an action lies"). At this early stage in the litigation, the conversion claim may proceed for further factual development. However, the Court notes that should the federal claims over which this Court has original jurisdiction be dismissed at any stage, the Court will likely decline to exercise supplemental jurisdiction over Plaintiff's state law claim. 28 U.S.C. § 1367(c)(3).

## MOTION TO COMPEL

Plaintiff moves the Court to compel discovery and order Defendants to produce various documents. Doc. 6 at 1-2. As set forth below, discovery has not yet begun in this case. Moreover, once it has begun, Plaintiff must first seek discovery from the Defendants directly, rather than by petitioning this court for an order compelling discovery. *See* Fed. R. Civ. P. 26-36. Only if a Defendant fails to comply with a proper discovery request should Plaintiff seek relief from this Court through a motion to compel discovery. *See* Fed. R. Civ. P. 37(a). Plaintiff's motion to compel (Doc. 6) is therefore **DENIED** as premature.

## CONCLUSION

As set forth in detail above, Plaintiff's motion to amend (Doc. 5) is **GRANTED**, and his motion to compel (Doc. 6) is **DENIED**. Plaintiff's motion to proceed IFP (Doc. 2) is **GRANTED**, and his procedural due process, Takings Clause, and state law claims shall proceed for further factual development. It is **RECOMMENDED**, however, that his remaining claims be dismissed without prejudice.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation. Plaintiff may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Simpson, Latour, and Tucker, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the PLRA. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written

permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

**IT IS FURTHER ORDERED** that Defendants comply with the attached "Required Disclosure of the Existence of Video or Photographic Evidence When Plaintiff Files Suit Against One or More Georgia Department of Corrections Employees Relating to Events That Occurred During Plaintiff's Incarceration within the Georgia Department of Corrections."

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED and RECOMMENDED**, this 21stth day of October, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE

**REQUIRED DISCLOSURE OF THE EXISTENCE OF VIDEO OR PHOTOGRAPHIC EVIDENCE WHEN PLAINTIFF FILES SUIT AGAINST ONE OR MORE GEORGIA DEPARTMENT OF CORRECTIONS EMPLOYEES RELATING TO EVENTS THAT OCCURRED DURING PLAINTIFF'S INCARCERATION WITHIN THE GEORGIA DEPARTMENT OF CORRECTIONS**

Counsel for the Defendants shall confer with the Defendants and with appropriate Georgia Department of Corrections ("GDC") staff, and no later than 30 days from the date of entry of this Required Disclosure file the following disclosures:

(1) State whether, at the time of the incident alleged in the complaint, the facility had stationary or mounted cameras in the area where that incident allegedly occurred.

(2) If so, state whether those cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and the identity of the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(3) State whether body-worn or handheld cameras recorded the events alleged by Plaintiff, whether those recordings have been preserved, and identify the custodian of the recordings. If the recordings have not been preserved, explain in detail why.

(4) If Plaintiff complains of a use of force (either anticipated, spontaneous, or unanticipated) as that term is defined in the GDC Standard Operating Procedure, Use of Video Recording Equipment, Policy No. 204.11, and the GDC Standard Operating Procedure, Use of Force and Restraint for Offender Control, Policy No. 209.04, identify the custodian of any recordings of the events alleged. If there are no available recordings, explain in detail why the events were not recorded or, if recorded but no longer available, why the recordings were not preserved.

(5) Identify all GDC employees contacted to gather the information required by this disclosure.

Counsel is directed to preserve all video recordings and any photographs that may have captured the events giving rise to the complaint. Failure to do so may result in the imposition of sanctions.